Harry B. FLYNN, Plaintiff,

v.

Daniel DYZWILEWSKI, Hon. George N. Leighton, Edward Hegerty, Michele Smith, Philip Turner, James DiNatale, Thomas Moore, and Edwin Meese, Attorney General of the United States, Defendants.

No. 85 C 8618.

United States District Court, N.D. Illinois, E.D.

Sept. 19, 1986.

Harry B. Flynn, pro se.

Gail Ginsberg, Asst. U.S. Atty., Chicago, Ill., for defendants Dyzwilewski, Leighton, Hegerty, Smith, Turner and Meese.

Michael D. Sher, Andrew G. Neal, Friedman & Koven, Chicago, Ill., for defendant Moore.

Heather M. Higgins, Thomas L. Browne, Hinshaw, Culbertson, Moelmann, Hoban &

Fuller, Chicago, Ill., for defendant DiNatale.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiff Harry Flynn was at one time an informer for the FBI. While in Cook County Jail in 1981, he apparently got wind of a plot by a fellow prisoner to have one of that prisoner's victims murdered in order to prevent the victim from testifying. He fed information on the plot to the FBI through defendant Daniel Dyzwilewski, an FBI agent. Later, however, Flynn feared that his role as an informer had been discovered. Since the prisoner about whom Flynn was passing information was a member of a gang well represented among those incarcerated in the Illinois prison system, Flynn began to fear for his personal safety. He made an arrangement with Dyzwilewski to plead guilty to a violation of 18 U.S.C. § 2314, interstate transportation of stolen goods, specifically of jewelry from a robbery in Ohio to the Chicago area. That took him out of state into federal custody. He served a few months of his four-year sentence at the Chicago Metropolitan Correctional Center (MCC) and was paroled.

Flynn's dissatisfaction with the bargain he had made did not erupt until late in 1983. Illinois authorities arrested him on charges of attempted murder. The upshot of the arrest was a revocation of his federal parole and a return to prison, this time to the federal penitentiary in Terre Haute, Indiana. Apparently Flynn regards that action as not part of the deal. His first step was to file a motion to vacate his sentence under 28 U.S.C. § 2255. He alleged that the crime of which he had been convicted was manufactured wholly for the purpose of getting him into federal custody. Agent Dyzwilewski countered that he had assured himself before the plea that ample grounds existed for believing Flynn guilty, including a description of the robber from the robbery victim in Ohio that closely matched Flynn's. Judge Leighton of this district, also a defendant in this suit,

found after two days of evidentiary hearings that Flynn's plea was voluntary and that the evidence not only provided a factual basis for the charges against Flynn but also for his guilt. He denied the motion. *United States v. Flynn*, No. 84 C 8286 (N.D.Ill. Oct. 4, 1985). The Seventh Circuit affirmed. *Flynn v. United States*, 789 F.2d 919 (7th Cir.1986).

Undaunted, Flynn also filed this lawsuit, suing Judge Leighton, Agent Dyzwilewski, the director of the Chicago office of the FBI, the assistant United States attorneys who represented the Government in Flynn's conviction and Flynn's § 2255 motion, Flynn's lawyer for the § 2255 suit, his lawyer for the criminal proceeding (who testified at the § 2255 hearings), and, for good measure, Attorney General Meese. (He has since attempted to amend his complaint to include the assistant United States attorney who is representing the federal defendants in this suit.) Flynn, a white Irish male, complains, apparently in four counts (the complaint actually must be extracted from a 41–page "memorandum of law"), that all of these defendants conspired to deprive him of his civil rights in violation of 42 U.S.C. § 1985(3); that his two attorneys violated his sixth amendment rights, his attorney-client privilege, and his rights under the American Bar Association Code of Professional Responsibility; that all the defendants are liable to him under the Federal Tort Claims Act for negligently allowing him to be falsely imprisoned through a malicious prosecution; and that the defendants failed to prevent a conspiracy depriving him of his civil rights in violation of 42 U.S.C. § 1986. He seeks $6 million in compensatory damages, $4,500,000 in punitive damages, and $2,500,000 in costs.

The defendants have all moved to dismiss the action variously on grounds of immunity, failure to state a claim, collateral estoppel and improper service of process. Flynn requests appointment of counsel under 28 U.S.C. § 1915 and demands that this court recuse itself. Flynn has already gained some benefit from this suit.

According to a communication to this court from Flynn, an additional criminal charge was filed against him in the U.S. District Court for the Southern District of Indiana. Flynn in response alleged that the FBI was retaliating against him for bringing this lawsuit. Judge Brooks of the Terre Haute Division of that district ordered that Flynn be transferred back to the MCC. *United States v. Flynn,* No. TH 86–1–CR (S.D.Ind. Apr. 1, 1986). Flynn also was apparently released from the MCC on August 6th. The reasons for that release have not been communicated to this court.

## DISCUSSION

### I. Recusal

The obvious threshold question here is the recusal demand, since if this court should recuse itself, it should not rule on the remaining motions. Flynn alleges that this court is biased in favor of the FBI because (1) our name was added as a respondent to a mandamus petition Flynn filed with the Court of Appeals, putting this court on the same side of the "versus" as the FBI; (2) according to Flynn, Edward Hegarty, director of the Chicago office, referred to this court with the phrase, "He's one of our judges;" (3) this court has previously ruled against Flynn on discovery motions.

We note at the outset that Flynn cannot have made a motion for recusal under 28 U.S.C. § 144. That statute expressly requires that an affidavit, setting out the facts which give rise to the belief that bias exists, accompany the motion. The procedure must be strictly complied with. *See, e.g., Danielson v. Winnfield Funeral Home of Jefferson, Inc.,* 634 F.Supp. 1110 (E.D.La.1986). Flynn has not filed such an affidavit. We therefore treat the question on our own motion under the more general provisions of 28 U.S.C. § 455.

Flynn's concern with our presence as a respondent to his petition is of course misplaced. A writ of mandamus runs against the court; therefore, the name of the judge must appear as a respondent. As to the alleged statement of defendant Hegarty,

this court has of course no idea of the context in which it was made. Nevertheless, taking Flynn's allegations as true, which we must for purposes of a recusal motion, *see United States v. Meester,* 762 F.2d 867, 885 (11th Cir.), *cert. denied, Sawyer v. United States,* 474 U.S. ——, 106 S.Ct. 579, 88 L.Ed.2d 562 (1985), they still provide no ground for recusal.

Flynn presumably is arguing that we have a predisposition generally in favor of the FBI or law enforcement. A predisposition for or against a particular class of litigants, however, is not the kind of bias that requires disqualification. Only something which would go beyond that, indicating bias against a particular litigant or in a particular case and so making a fair judgment on the merits of that case questionable, is disqualifying bias. *See, e.g., United States v. Dodge,* 538 F.2d 770, 782 (8th Cir.1976), *cert. denied,* 429 U.S. 1099, 97 S.Ct. 1119, 51 L.Ed.2d 547 (1977) (allegation of bias against Indians generally and a particular Indian organization); *Samuel v. University of Pittsburgh,* 395 F.Supp. 1275, 1278–1279 (W.D.Pa.1975), *vacated on other grounds,* 538 F.2d 991 (3rd Cir.1976) (against class action suits and suits against charitable organizations); *Chessman v. Teets,* 239 F.2d 205, 216 (9th Cir.1956), *vacated on other grounds,* 354 U.S. 156, 77 S.Ct. 1127, 1 L.Ed.2d 1253 (1957) (against federal habeas corpus suits). The presumption is that the judge knows how to rise above his predispositions in order to render a fair decision on the facts and law of a particular case. Flynn is alleging no facts which would rebut that presumption. The same principle applies to prior rulings. *See David v. Attorney General,* 699 F.2d 411, 416–417 (7th Cir.), *cert. denied,* 464 U.S. 832, 104 S.Ct. 113, 78 L.Ed.2d 114 (1983). This court is not aware of anything which would suggest that it cannot decide this case fairly. There will be no recusal.

### II. Dismissal of Improper and Immune Parties

We next address the motions to dismiss, since it would make no sense to appoint

counsel in one paragraph for a case which would be summarily dismissed in the next. *See, e.g., Trinkle v. Bell Litho, Inc.,* 627 F.Supp. 764, 766 (N.D.Ill.1986). A similar claim in which a federal prisoner alleged a conspiracy and "frame-up" by judges, a United States attorney, and defense attorneys was decided on dismissal and summary judgment motions in *People ex rel. Snead v. Kirkland,* 462 F.Supp. 914 (E.D. Pa.1978). We will work our way through the layers of analysis required for the various defenses as follows: first, dismissal of persons not proper parties to the suit; second, dismissal of persons absolutely immune from damages; third, the question of whether any count of the complaint states a federal claim, without which we have no jurisdiction; fourth, remaining immunity and collateral estoppel questions. The result of this analysis will be that for one or another of these reasons, each part of Flynn's complaint must be dismissed, most parts for more than one reason. *Cf. Snead,* 462 F.Supp. at 923.

### A. Improper Party

■ When a complaint fails to allege facts which would indicate the personal involvement of a governmental official in the injury complained of, that official must be dismissed as a party to the suit. *Crowder v. Lash,* 687 F.2d 996, 1005 (7th Cir. 1982). Flynn's complaint alleges nothing whatsoever about any conduct by Attorney General Meese in the incidents complained of. Accordingly, Attorney General Meese is dismissed from this suit. The same principle would appear to apply to Director Hegarty. However, giving the liberal construction which we must to a *pro se* complaint, *see, e.g., Hossman v. Blunk,* 784 F.2d 793 (7th Cir.1986), it is possible that Flynn is alleging the active involvement of Hegarty in the decision which led to Flynn's federal conviction. We therefore postpone briefly a ruling touching Hegarty.

### B. Absolute Immunity

■ We are next obliged to consider applicable immunities since an official is entitled to a ruling on an immunity defense as soon as that question may be determined. *Mitchell v. Forsyth,* 472 U.S. 511, ——, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985). A judge is absolutely immune from liability for damages for acts performed in his or her judicial capacity whether the claim is a constitutional violation or a common law tort. *Dennis v. Sparks,* 449 U.S. 24, 27, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980). The only exception lies where the judge acted in the clear absence of all jurisdiction. *Stump v. Sparkman,* 435 U.S. 349, 357, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978). Judge Leighton had jurisdiction over the original guilty plea to the federal offense and also over the § 2255 motion. He is therefore immune.

■ Likewise, prosecutors are absolutely immune when carrying out prosecutorial functions. *Cleavinger v. Saxner,* 474 U.S. ——, ——, 106 S.Ct. 496, 500, 88 L.Ed.2d 507 (1985); *Imbler v. Pachtman,* 424 U.S. 409, 427, 96 S.Ct. 984, 993, 47 L.Ed.2d 128 (1976). The acts by the assistant U.S. attorneys of which Flynn complains were all prosecutorial acts. They are therefore also immune. Judge Leighton, Assistant U.S. Attorney Michele Smith and Assistant U.S. Attorney Philip Turner are all dismissed as parties to this suit.[1]

■ At this point, then, only the FBI agents and the two attorneys who at various times represented Flynn remain in the suit. We note that insofar as the claims against attorney James DiNatale stem from his testimony as a witness at Flynn's § 2255 hearing, he too is absolutely im-

---

1. Flynn's attempt to amend his complaint to include Assistant United States Attorney Gail Ginsberg, who represents the federal defendants here, as a defendant in his suit fails because it appears only as a postscript to a memorandum rather than as a motion. However, under the circumstances, we think prosecutorial immunity would extend as well to her acts on behalf of her colleagues and the other governmental defendants here, since those acts are part of her "official functions in the judicial process." *Briscoe v. LaHue,* 460 U.S. 325, 334, 103 S.Ct. 1108, 1115, 75 L.Ed.2d 96 (1983).

mune from damages. *Cleavinger,* 474 U.S. at ——, 106 S.Ct. at 500; *Briscoe v. La-Hue,* 460 U.S. 325, 335, 103 S.Ct. 1108, 1115, 75 L.Ed.2d 96 (1983). And since neither DiNatale nor Attorney Thomas Moore is a federal employee, insofar as Count 3 of Flynn's complaint, purportedly under the Federal Tort Claims Act (FTCA), is based on their conduct, those portions of the count must fail. The complaint thus trimmed would appear to consist of the following: claims against the two attorneys purportedly under the sixth amendment; claims against the FBI agents under the FTCA; and claims for a conspiracy and failure to prevent a conspiracy against all of these persons under §§ 1985(3) and 1986. The FBI agents assert immunity too, but they are absolutely immune only to common law torts arising out of their discretionary functions as agents, not to damage claims arising from a constitutional infringement. They have only qualified immunity to the latter. See *Hall v. United States,* 704 F.2d 246, 249 (6th Cir.), *cert. denied,* 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 698 (1983). We must therefore determine what kind of claims Flynn asserts before determining their immunity.

### III. Lack of Any Claim Arising Under Federal Law

#### A. Against the Attorneys

■ We begin this stage of the analysis with a short excursion into constitutional law. The Constitution, with rare exceptions, protects individuals only against the acts of government, not against the acts of private persons. *United Brotherhood of Carpenters & Joiners of America, Local 610, AFL–CIO v. Scott,* 463 U.S. 825, 831, 103 S.Ct. 3352, 3357, 77 L.Ed.2d 1049 (1983); *United States v. Guest,* 383 U.S.

745, 755, 86 S.Ct. 1170, 1176, 16 L.Ed.2d 239 (1966). Flynn's attorneys did not represent the Government in the guilty plea or in the § 2255 hearing; indeed, they represented Flynn. Their conduct cannot be construed as actions of any government, state or federal. Therefore the sixth amendment does not provide Flynn with a cause of action.

As to any breach of the attorney-client privilege or of the ABA Code of Professional Responsibility, the question of whether or not such a breach would give Flynn an action for damages would be a matter of Illinois state law. The Constitution also sets up a division of labor between state and federal courts in our federal system. When a suit is not between citizens of different states, a federal court cannot hear a state law claim unless a viable federal law claim arises out of the same nucleus of operative facts, giving us subject matter jurisdiction. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1983). Thus we can move no further on Flynn's claim against his attorneys unless a federal claim exists elsewhere in the complaint.[2] The next step, then, must be to see if Flynn has a federal claim.

#### B. Under the Conspiracy Statutes

■ He would have one if his allegations stated a § 1985(3) violation. However, they do not. Congress passed the relevant portion of that section to implement the thirteenth amendment, which prohibits slavery, one of the rare constitutional provisions that does reach the acts of private individuals. *See Griffin v. Breckenridge,* 403 U.S. 88, 105, 91 S.Ct. 1790, 1799, 29 L.Ed.2d 338 (1971). However, the other side of that coin is that the statute must be interpreted in light of the goals Congress

---

**2.** We note in passing, however, that any state law claim Flynn might have, presumably for malpractice, does not look particularly promising. The attorney-client privilege is Flynn's to assert, and he did not assert it at the § 2255 hearing. *See, e.g., United States v. King,* 484 F.2d 924, 927 (10th Cir.1973), *cert. denied,* 416 U.S. 904, 94 S.Ct. 1607, 40 L.Ed.2d 108 (1974). The ABA Code of Professional Responsibility is

only the law in a jurisdiction if that jurisdiction chooses to adopt it, and only on the terms in which it is adopted. Illinois has its own code, and that code does not of itself give a right of action to clients. *Corti v. Fleisher,* 93 Ill.App.3d 517, 532, 49 Ill.Dec. 74, 86, 417 N.E.2d 764, 776, (1st Dist.1981). *Cf. Bickel v. Mackie,* 447 F.Supp. 1376, 1383 (N.D.Iowa), *aff'd mem.,* 590 F.2d 341 (8th Cir.1978).

had in mind for it, goals related to the elimination of slavery. A conspiracy thwarts those goals, and thus violates the statute, only when it is motivated by a racially-based, or perhaps class-based, discriminatory animus. *Id.* at 102, 91 S.Ct. at 1798. *See also Scott,* 463 U.S. at 835–837, 103 S.Ct. at 3359–3361; *Grimes v. Smith,* 776 F.2d 1359, 1366 (7th Cir.1985). Flynn does not allege that the defendants conspired to put him in jail because he was white or because he was Irish. Flynn's complaint thus does not state a claim under § 1985(3).

Of course, since Flynn is a *pro se* plaintiff, we must read his complaint liberally. He may be trying to allege a violation of § 1985(2), which deals with certain types of obstruction of justice in state and federal courts. He could, for example, be maintaining that his trial in federal court, by snatching him from the Illinois court system, "had the purpose of ... defeating ... the due course of justice" in state courts. 42 U.S.C. § 1985(2). That reading, however, will not save the claim. Under that portion of the statute, only a conspiracy motivated by the same kind of discriminatory animus is actionable. *Kush v. Rutledge,* 460 U.S. 719, 722, 103 S.Ct. 1483, 1485, 75 L.Ed.2d 413 (1983). The first portion of § 1985(2) refers to federal courts and does not require such an animus, but by its own language it applies only to intimidation of witnesses or jurors. *Id.* at 723, 726, 103 S.Ct. at 1486, 1487. *See also Snead,* 462 F.Supp. at 921. Flynn does not allege any such intimidation. If there is no cause of action under § 1985, then automatically there is no § 1986 action either, since liability under that section is wholly dependent on a § 1985 violation. *Grimes,* 776 F.2d at 1363 n. 4; *Williams v. St. Joseph Hospital,* 629 F.2d 448, 452 (7th Cir.1980). Counts 1 and 4 of Flynn's complaint do not state a claim and must be dismissed.

### C. Under the Federal Tort Claims Act

■ If Flynn has a federal claim, it must be found elsewhere. His complaint has a third count purportedly arising under the FTCA, 28 U.S.C.A. §§ 1346(b), 2671–2680. That count appears to contain a claim for false imprisonment, or perhaps malicious prosecution, at the hands of agents Hegarty and Dyzwilewski. That claim, however, is fatally flawed. The FTCA provides for suits against the United States for the negligent or wrongful acts of federal employees acting within the scope of their employment where the United States as the employer would be vicariously liable under state law. 28 U.S.C. § 1346(b). The Act, however, only provides for suit against the United States. It does not provide us with jurisdiction over a claim against a federal employee. *Diminnie v. United States,* 728 F.2d 301, 306 (6th Cir.), *cert. denied,* 469 U.S. 842, 105 S.Ct. 146, 83 L.Ed.2d 85 (1984). Thus, a tort claim ostensibly under the Act which names only federal employees as defendants and not the United States fails for lack of federal subject matter jurisdiction. *Mars v. Hanberry,* 752 F.2d 254, 256 (6th Cir.1985). Flynn's complaint does not name the United States as a party. We therefore have no jurisdiction over the claim.

■ Even if under the principle of liberal construction for *pro se* plaintiffs we could somehow interpolate the United States into the complaint, Flynn's claim still could not be salvaged. An FTCA claim begins with notice of the claim to the agency employing the alleged tortfeasor. 28 U.S.C. § 2675(a); *Miller v. United States,* 741 F.2d 148, 150 (7th Cir.1984). There is no indication here that Flynn ever presented any claim for damages to the FBI. Further, that notice must be given within two years of the time that the action accrued. 28 U.S.C. § 2401(b); *Green v. United States,* 765 F.2d 105, 107 (7th Cir. 1985). Flynn's action accrued at the latest when he was convicted in late 1982. The limitation provision seems particularly relevant here. Flynn expressed no dissatisfaction with his conviction at the time he was convicted, or while he was serving a portion of his sentence at the MCC, or later when he was on parole. His complaints began only after he was rearrested and his parole revoked. He had ample opportunity to make his claims for damages earlier but

did not. Flynn's Count 3 is barred for lack of notice and also time barred. It must be dismissed.

### D. "Constitutional Torts"

Our duty to Flynn's *pro se* status requires that before we dismiss the complaint in its entirety, we examine it on our own to see if any other theories of recovery might provide the federal jurisdiction he now lacks. The overall thrust of the complaint appears to be tortious conduct by FBI agents and others which infringed Flynn's civil rights. That suggests a "constitutional tort" on the model of *Bivens v. Six Unknown Named Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Deprivation of a constitutional right would, of course, provide federal subject matter jurisdiction. Flynn indeed has an interest in his liberty which is protected from overweening federal intrusion by the fifth amendment. The facts which Flynn recounts describe prosecution, conviction and incarceration—in other words, a deprivation of liberty. It is possible, then, that Flynn seeks to recover through a *Bivens* action.

Nevertheless, a *Bivens* action will not lie on these facts either. The fifth amendment protects only against a deprivation of liberty by the federal government which is without due process of law. A deprivation of liberty of itself is not unconstitutional. If it was, no criminal could ever be imprisoned. Rather, the constitutionally-protected liberty interest is infringed by a deprivation without proper procedures. *See, e.g., Daniels v. Williams,* 474 U.S. ——, ——, 106 S.Ct. 662, 679, 88 L.Ed.2d 662 (1986) (Stevens, J., concurring); *Toney-El v. Franzen,* 777 F.2d 1224, 1227 (7th Cir. 1985), *cert. denied,* 476 U.S. ——, 106 S.Ct. 2909, 90 L.Ed.2d 994 (1986) (both cases

construing identical clause in fourteenth amendment). If the FBI agents had seized Flynn, whisked him away to Terre Haute and locked him up for years, never bothering to bring anything about him before the courts, they would have violated his constitutional rights. Deprivation after an opportunity for a judicial hearing, however, does not infringe due process. *See, e.g., Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542–44, 105 S.Ct. 1487, 1494, 84 L.Ed.2d 494 (1985); *Goldberg v. Kelly,* 397 U.S. 254, 261, 90 S.Ct. 1011, 1016, 25 L.Ed.2d 287 (1970). Flynn has had not one but two such opportunities: first when he pled guilty, and again with his § 2255 hearing. Appropriate procedure was followed.[3]

We are left, then, with what amounts to a claim of malicious prosecution and/or false imprisonment against one, perhaps two, federal agents. A tort does not automatically become a constitutional matter simply because a government employee commits it. *Daniels,* 474 U.S. at —— – ——, 106 S.Ct. at 665–666; *United States v. Caceres,* 440 U.S. 741, 755, 99 S.Ct. 1465, 1473, 59 L.Ed.2d 733 (1979); *Carson v. Block,* 790 F.2d 562, 565 (7th Cir.1986). Thus, a claim of malicious prosecution against a government employee, standing alone, is not a constitutional tort, *Tarkowski v. County of Lake,* 775 F.2d 173 (7th Cir.1985), and neither is a claim of false imprisonment. *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Flynn's claims, if any, against the FBI agents are actually state law claims over which this court has no subject matter jurisdiction.

### IV. Additional Problems

Further, if the complaint alleges only common law torts stemming from the

---

3. For essentially the same reason, one cannot find here a deprivation which "shocks the conscience," *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952), thus triggering a constitutional claim under the doctrine of substantive due process. *See, e.g., Holland v. Breen,* 623 F.Supp. 284, 288 (D.Mass. 1985). The allegations on their face are probably shocking enough: a conspiracy among anyone who had anything to do with either Flynn's

guilty plea and conviction or his § 2255 hearing, including the judge, to put Flynn away on a "manufactured" crime. However, the Seventh Circuit reviewed the § 2255 hearing and held that the conviction should stand. Flynn's complaint does not include allegations that an entire panel of the Seventh Circuit was in on the conspiracy too. Without an improper conviction, the conscience is no longer shocked.

discretionary functions of these federal employees, then they are almost certainly immune from Flynn's claims for damages. *See Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); *Carson*, 790 F.2d at 564; *Oyler v. National Guard Ass'n of the United States*, 743 F.2d 545, 552–553 (7th Cir.1984). An actual decision on that subject would require determination of the exact scope of the duties of both agents. That determination would depend on facts not before the Court, but a conclusion of immunity seems quite likely.

And if by some chance the agents are not immune, Flynn's claims against them would still be barred. A prosecution is not malicious if there is probable cause for it, *Terket v. Lund*, 623 F.2d 29, 31 (7th Cir.1980), and an imprisonment is not false if the prisoner has been duly convicted of the offense. Here, not only was there probable cause for the prosecution, but Flynn was duly convicted, and the Seventh Circuit upheld that conviction against Flynn's § 2255 motion. As a matter of collateral estoppel, then, Flynn could not litigate those questions over again in a suit for damages. *See Snead*, 462 F.Supp. at 921. There is apparently a split in authority in this circuit on the preclusive effect of a guilty plea when it stands alone. *Compare Rodriguez v. Schweiger*, 796 F.2d 930, 933 (7th Cir.1986) (conclusive as to underlying facts) *with Country Mutual Insurance Co. v. Duncan*, 794 F.2d 1211, 1215 (7th Cir.1986) (not conclusive) (both applying Illinois law). However, in the instant case Flynn's guilty plea does not stand alone. There is no dispute about the preclusive effect of a civil action for collateral relief, such as federal habeas corpus or, as here, a § 2255 proceeding, on a subsequent civil rights suit. *See Preiser v. Rodriguez*, 411 U.S. 475, 497, 93 S.Ct. 1827, 1840, 36 L.Ed.2d 439 (1973); *Warren v. McCall*, 709 F.2d 1183, 1185 (7th Cir.1983). *Cf. Sanders v. United States*, 373 U.S. 1, 15–17, 83 S.Ct. 1068, 1077–1078, 10 L.Ed.2d 148 (1963) (preclusive effect of denial of § 2255 motion on subsequent § 2255 motions). Since Flynn's § 2255 motion involved questions identical to those he raises against the federal agents here, he cannot now try them afresh.

Having peeled off the layers of Flynn's complaint one by one, this Court finds nothing left which can be litigated in this court. Defendant Meese is not a proper party, defendants Leighton, Smith and Turner are immune, and defendant DiNatale is immune for his acts as a witness. None of the counts of Flynn's complaint state a federal claim, so this court has no jurisdiction. In addition, defendants Dyzwilewski and Hegarty are almost certainly immune to any damages for the common law tort claims against them which might remain in Flynn's complaint; moreover, Flynn is collaterally estopped from bringing those claims. Under those circumstances, appointment of counsel would be a futile act. *Maclin v. Freake*, 650 F.2d 885, 887 (7th Cir.1981). It is unnecessary to reach the question of service of process.

### CONCLUSION

This court declines to recuse itself. Defendants' motions to dismiss plaintiff's complaint are all granted and the complaint is dismissed. Plaintiff's petition for appointment of counsel is denied.